OPINION OF THE COURT
Emily Jane Goodman, J.
This is a personal injury action for damages suffered by the infant plaintiff Jennifer Colon (Jenny) by ingesting lead-based paint chips, allegedly as a result of the negligence of the landlord defendant New York City Housing Authority (the HA). Jenny was five years old when her doctor reported to the HA that she had an elevated lead level in her blood. The HA moves for summary judgment on the grounds that plaintiffs have not offered any proof that the HA had actual or constructive notice of a defective condition relating to chipping or peeling lead paint in the plaintiff’s apartment.
Additionally, the HA argues that a paint chip taken from the apartment was tested and measured only .38% amount of lead which is below the maximum permissible amount of lead in paint. The HA bases this argument on section 173.13 of the New York City Health Code which makes it unlawful for a person to sell or use paint that contains more than 0.5% of metallic lead on the interior of any residence accessible to children under seven years of age.
Defendant also argues that Jenny’s blood level of 22mcg/dL on July 20, 1989 does not constitute lead poisoning under applicable Federal, State and City law. Defendant claims that the Federal guidelines requiring a concentration of lead in whole blood of 25mcg/dL or greater to constitute an "elevated” blood lead level preclude recovery for an infant with a level of 22.
NOTICE
The Appellate Division, First Department, has resoundingly rejected the HA’s position that it required notice of the peeling and chipping of lead paint. In Juarez v Wavecrest Mgt. Team (212 AD2d 38), the Appellate Division has held that a violation of the Administrative Code provisions prohibiting the use of lead paint in apartments in New York City which *350 are accessible to children under seven years of age constitutes negligence per se and that "[i]n plain and unambiguous language, the Administrative Code provision puts the burden of identifying and removing lead paint hazards upon the landlord.” (212 AD2d, at 47, supra.) The Court also found that an implied duty to inspect is necessary "to ensure that a landlord will live up to the responsibilities unequivocally imposed by the Code.” (Supra, at 47.) A landlord may escape liability only by proving to the factfinder that the lead paint hazard existed despite the landlord’s "diligent and reasonable efforts to prevent it.”* (Supra, at 48.)
In this case, the HA has not shown any efforts whatsoever to prevent the hazard. In fact, at oral argument the defense did not deny knowing that paint with lead had been used by the HA in the plaintiff’s apartment. Therefore, under Juarez (supra), defendant is not entitled to summary judgment; plaintiff, in fact, may be entitled to summary judgment provided that the evidence shows that Jenny does suffer from lead poisoning.
LEAD POISONING THRESHOLD
Defendant next argues that Jenny’s blood lead level of 22mcg/dL does not constitute an elevated blood level or lead poisoning under the definition by the Centers for Disease Control (CDC). Plaintiff argues that the CDC standard is outdated and that Jenny’s doctor, Dr. Jacqueline Avein, M.D., had determined that Jenny had an elevated blood level in 1989. Plaintiff also submits a 1991 report from the CDC which states that "the scientific evidence showing that some adverse effects occur at blood lead level as low as lOug/dL in children has become so overwhelming and compelling it must be a major force in determining how we approach childhood lead exposure.”
Thus, defendant’s interpretation of the CDC definition is incorrect and, parenthetically, contrary in spirit and findings to the CDC’s approach to lead paint, which is to prohibit its use regardless of the blood levels of infant tenants. Jenny’s level of 22ug/dL also is higher than the definition of elevated *351 lead levels in Public Health Law § 1370 (6) which defines elevated lead levels as "a blood lead level greater than * * * ten micrograms of lead per deciliter of whole blood or such blood lead level as may be established by the department pursuant to rule or regulation.” The Code provisions cited by defendant which refer to blood lead levels of 50 micrograms do not define the parameters of liability for lead poisoning, but rather concern treatment of children who manifest screening results. Defendant’s position is also belied by Administrative Code of the City of New York § 27-2013 (h) (1), which clearly prohibits the continued presence of lead paint in any multiple dwelling where children under six are likely to reside, regardless of the level of lead found in an individual child’s blood. Thus, both State and Federal guidelines consider a level of 22ug/dL to be dangerous. Additionally, the Public Health Law prohibits use of paint containing more than .06 of 1% of lead-based paint on interior surfaces of a dwelling. (Public Health Law § 1372.) Thus, the paint chips found in plaintiff’s apartment contained an unlawful level of lead.
Accordingly, defendant’s motion for summary judgment is denied. Counsel for both sides are instructed to contact Part 17 within 30 days to schedule a discovery compliance conference.

 The court takes a dim view of HA’s failure to either submit the Juarez decision (supra), ask for an adjournment to consider its impact on this case, withdraw its motion in light of Juarez or otherwise acknowledge the Appellate Division decision.